**PENNS MANOR AREA SCHOOL DISTRICT, Appellant,**

v.

**PENNS MANOR AREA EDUCATION ASSOCIATION and Grievants.**

Commonwealth Court of Pennsylvania.

Argued June 5, 1997.

Decided July 11, 1997.

David P. Andrews, Altoona, for appellant.

William K. Eckel, Johnstown, for appellees.

Before McGINLEY and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The Penns Manor Area School District (District) appeals from the order of the Court of Common Pleas of Indiana County (trial court) denying the District's petition to vacate an arbitration award. We reverse.

On December 14, 1993, the Penns Manor Area Education Association (Association) filed a grievance on behalf of seven employees (grievants) who were permanently hired by the District following prior experience as long term substitute teachers. In the grievance, the Association alleged that the District violated the parties' collective bargaining agreement (CBA or agreement) by failing to include long term substitute experience in calculating the grievants' step placements on the salary schedule. The matter proceeded to arbitration and a hearing was held on April 16, 1996.

The District noted that five of the grievants received written notice of their salary scale placements at the beginning of school years 1992–93 and 1993–94, but did not file a grievance until December 14, 1993. The District argued that the grievance is time barred by Article III of the agreement, which provides that all grievances must be filed within twelve work days of the alleged violation or within twelve work days from the date when the employee could reasonably be expected to know the alleged violation occurred. The District further argued that because the Association never objected, in a timely fashion, to the District's long standing practice of not giving salary step credit for long term substitute experience, the Association is estopped from arbitrating that issue now.

The District also asserted that the Association waived the right to arbitrate this matter because the Association supplied the salary matrix used as the basis for allocating the funds negotiated for salaries under the CBA. The District maintained that the salary matrix showed step placements which reflected the District's position of not giving salary step credit for long term substitute experience. The District contended that by supplying the salary matrix, the Association demonstrated a knowing and formal agreement with the step placements.

Finally, the District argued that the only provision of the CBA which addressed the issue of step placement was inapplicable to this case. Article XI, Section E, of the agreement provides that a teacher must work a minimum of forty-five days during which students are in attendance in order to receive credit for one year of service on the salary schedule. The District superintendent testified without contradiction that this section was included in the agreement at the District's request in order to prevent regular teachers from returning from maternity leave or other extended leave for as little as two weeks and receiving a full year's credit for step placement and that there was no discussion or negotiation that this section would apply to long term substitutes appointed to permanent positions.

The Association asserted that the grievance was a continuing one and was timely as to the first payroll date which meets the agreement's time limitation for filing. The Association also argued that Section 1142 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1142, requires that annual salaries include an annual service increment for service in the district during the previous school year by advancing the salary of the professional at least one full step on the salary schedule.[1] In addition, the Association relied on Article XI, Section E, of the agreement, noting that there was nothing in the agreement which excludes substitutes from this or any of the agreement's provisions.

The arbitrator determined that there was no evidence as to when the Association knew of its rights under Section 1142 of the School Code or when the Association became aware of the alleged violations; he stated that "it can be assumed" that the Association's knowledge was concurrent with the filing of

---

1. The CBA contains a savings clause which adopts the provisions of the School Code.

the grievance. The arbitrator concluded that, although notice of step placement had been given to the teachers individually, such notice is not the equivalent of notice to the Association. In addition, the arbitrator noted the uncontroverted testimony of the Association's vice president that he prepared the salary matrix based upon information supplied by the District. Accordingly, the arbitrator found that the Association had not waived the issues raised, the Association was not estopped from grieving the matter, and the grievance was timely filed.

The arbitrator relied on *Central Bucks Sch. Dist. v. Central Bucks Ed. Association*, 49 Pa. D. & C.3d 254 (1988), in which the Bucks County Court of Common Pleas upheld the characterization of substitute teachers as professional employees within the meaning of the School Code and affirmed the grant of credit for prior service to former substitute teachers who were subsequently employed on a full time basis. The arbitrator concluded that the holding in *Central Bucks* was determinative of the grievants' rights under Article IV, Section A of the agreement (the statutory savings clause). Accordingly, the arbitrator sustained the grievance and ordered the grievants to be made whole retroactive to their date of hire as permanent teachers or to a date twelve work days prior to the filing of the grievance, whichever is latest.

The District filed a petition for review and an application to vacate the arbitrator's award with the trial court. The trial court first concluded that, because the timeliness of the grievance was covered by the CBA and the arbitrator could rationally decide that the alleged salary step errors were continuing violations, the decision that the grievance was timely and arbitrable must be upheld.

The trial court next determined that the finding that the grievants were entitled to credit for their long term substitute experience was not manifestly unreasonable, noting that the arbitrator had relied in part on cases holding that long term substitutes were members of the bargaining unit. The trial court rejected the District's argument that the holding in *Southern Tioga Educ. Ass'n v. Southern Tioga Sch. Dist.*, 668 A.2d 260 (Pa.

Cmwlth.1995), *petition for allowance of appeal denied*, 544 Pa. 665, 676 A.2d 1203 (1996), precludes an award of back pay based solely on the provisions of the School Code. Finally, the trial court noted that the issues of compensation and step placement are encompassed by the terms of the agreement and concluded that there was insufficient evidence to convince it that the arbitrator's interpretation of the agreement was manifestly unreasonable. Accordingly, the trial court denied the District's petition.

■■■ Our scope of review of an arbitrator's award is limited to determining whether the arbitrator's award derives its essence from the collective bargaining agreement between the parties; the award must be upheld if it can in any way be rationally derived from the agreement considering its language, context and any other indicia of the parties' intent. *Leechburg Area Sch. Dist. v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981). When it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a proper matter for judicial review. *Id.*

■■■ In addition, our review must be guided by Section 7302(d)(2) of the Judicial Code, 42 Pa.C.S. § 7302(d)(2), which provides as follows:

Where this paragraph is applicable, a court in reviewing an arbitration award pursuant to this subchapter *shall*, notwithstanding any other provision of this subchapter, *modify or correct the award where the award is contrary to law* and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment not withstanding the verdict. (Emphasis added.)

Although the presentation of a legal issue does not render arbitration improper for the reason that the arbitrator might fashion an invalid award, the courts have express statutory authority under Section 7302(d)(2) to review and correct legal errors on appeal. *Pennsylvania Labor Relations Bd. v. Bald Eagle Area Sch. Dist.*, 499 Pa. 62, 451 A.2d 671 (1982); *Greater Johnstown School Dist. v. Greater Johnstown Educ. Ass'n*, 167 Pa.

Cmwlth. 50, 647 A.2d 611 (1994); *Upper Merion Area Sch. Dist. v. Upper Merion Educ. Ass'n*, 85 Pa.Cmwlth. 115, 482 A.2d 274 (1984).

On appeal to this Court, the District again asserts that the arbitrator's determination with respect to Section 1142 of the School Code disregards established caselaw. Section 1142 of the School Code provides, in pertinent part, as follows:

> (a) ... all school districts ... shall pay all regular and temporary teachers ... the minimum salaries and increments for the school year 1968–1969 and each school year thereafter, as provided in the following tabulation in accordance with the column in which the professional employe is grouped and the step which the professional employe has attained by years of experience within the school district each step after step 1 constituting one year of service. When a school district, by agreement, places a professional employe on a step in the salary scale, each step thereafter shall constitute one year of service. When a district adopts a salary scale in excess of the mandated scale, it shall not be deemed to have altered or increased the step which the employe has gained through years of service.
>
> ＊  ＊  ＊  ＊
>
> (f) The mandated salaries provided in this section shall be applicable to all professional and temporary professional employees within their respective class. The annual salaries payable under this section ... shall include an annual service increment for service in the school district during the previous year by advancing the salary of the ... employe at least one full step on the minimum salary schedule *or* to the step on which he is entitled to be placed by virtue of years of experience within the school district, whichever is higher.

24 P.S. § 11–1142. In this case, the Association acknowledges that at all times relevant to this action the salaries of the grievants exceeded the minimum salaries set forth in the School Code.

The District argues that in *Southern Tioga*, this Court held that Section 1142 of the School Code requires nothing more of the District than payment of the minimum salaries set forth therein. The grievants in *Southern Tioga* had been placed on the incorrect step in the salary schedule due to breaks in their employment with the district and, after being so informed, the district placed the grievants on the proper salary step for the following school year. Although the school district agreed in the arbitration proceeding that the grievants had been underpaid for many years, in violation of the parties' collective bargaining agreement and the mandates of the School Code, the arbitrator denied the grievants' request for back pay and the trial court affirmed.

Relying on *Wildrick v. Board of Directors of Sayre Area Sch. Dist.*, 491 Pa. 25, 417 A.2d 617 (1980), and *Kipp v. Juniata County Sch. Dist.*, 87 Pa.Cmwlth. 212, 487 A.2d 444 (1985), the *Southern Tioga* court held that because the grievants' salaries at all times exceeded the minimum requirements of Section 1142, the grievants had no remedy for back pay under the School Code. However, the court found that the parties were denied the salaries they had bargained for *under their collective bargaining agreement* and reversed the trial court's order on that basis.

█ Because the grievants' salaries in this case exceeded the minimum requirements of Section 1142, the arbitrator's decision that Section 1142 compels an award of back pay is contrary to established caselaw. As was the case in *Southern Tioga*, the Association's claims must rise or fall on the basis of the terms of their agreement.

While Article XI, Section E, provides that a teacher who works a minimum of forty-five days will receive credit for one year of service towards placement on the salary schedule, there is no dispute that this provision was intended to apply to those teachers who returned briefly after taking leave. The Association argued that, prior to the inclusion of this section in the CBA, the District's practice was to grant a teacher credit for a year of service for as little as two weeks of work upon return from maternity leave. However, the arbitrator specifically found, in the absence of contrary evidence, that there

were no negotiations involving the application of this section to step placement for long term substitutes appointed to permanent positions.

■ The arbitrator made no findings with respect to past practice.[2] However, it is clear from his decision that the arbitrator relied on the provisions of Section 1142 of the School Code, as incorporated into the parties' agreement, as the basis for his award. As previously stated, the arbitrator's interpretation of Section 1142 is contrary to well-settled law.

Accordingly, the decision of the trial court is reversed and the arbitrator's decision is vacated.

## ORDER

NOW, July 11, 1997, the order of the Court of Common Pleas of Indiana County at No. 11330 CD 1996, dated November 18, 1996, is reversed and the arbitrator's decision is vacated.

2. An arbitrator may appropriately consider past practice under the following circumstances: 1) to clarify ambiguous language; 2) to implement general language which sets forth only a general rule; 3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and 4) to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the agreement. *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 381 A.2d 849 (1977).