**CHAMBERSBURG AREA SCHOOL DISTRICT**

v.

**CHAMBERSBURG AREA EDUCATION ASSOCIATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2002.
Decided Nov. 21, 2002.

Thomas M. Scott, Harrisburg, for appellant.

Jan G. Sulcove, Chambersburg and Kevin J. McKeon, Harrisburg, for appellee.

BEFORE: SIMPSON, Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

The Chambersburg Area Education Association (Association) appeals from an order of the Court of Common Pleas of the 39th Judicial District, Franklin County Branch (trial court), vacating an arbitration award that the Chambersburg Area School District (District) was required to consider prior substitute service when fixing the salary of its newly hired teachers. We reverse the trial court and reinstate the arbitrator's award.

The arbitration arose from a 1999 collective bargaining agreement (1999 CBA) between the District and the Association. That agreement was preceded by a long-standing controversy between the parties on the status and rights of long-term substitute teachers employed in the District. On January 22, 1998, the Association filed a grievance (1998 Grievance) on behalf of long-term substitute teachers, alleging as follows:

> The District violated the collective bargaining agreement when it denied long-term substitutes bargaining unit status and denied all rights as contained in the collective bargaining agreement and current laws and regulations without just cause.

Arbitrator's Opinion 4. (A.O.____). The District and the Association thereupon engaged in discussions on the grievance at the same time they negotiated an extension of their CBA, due to expire in 2000. In early February 1999, the 1998 Grievance was settled as follows:

> The District is prepared to discuss the terms and conditions of employment for long-term substitutes in conjunction

with negotiations for a new collective bargaining agreement to be effective July 1, 2000.

A.O. 4. On June 1, 1999, the parties executed a Memorandum of Understanding that provided that the terms of the employment of long-term substitutes would remain the prerogative of the District.[1] Shortly thereafter, on June 9, 1999, the parties executed the 1999 CBA, a six-year contract to expire in 2005. The 1999 CBA replaced the employment terms of school year 1999 2000, which had previously been established in the prior CBA, with higher wages.

On February 9, 2000, the Association filed a grievance asserting that the District violated the 1999 CBA by compensating newly hired teachers with prior substitute experience at a salary that was the same as that paid to first time teachers with no prior experience. Specifically, the Association stated in its grievance:

> The Chambersburg Area Education Association is filing this first level grievance. The District violated the collective bargaining agreement when it denied new hires credit for long-term substitute time earned in the District and placed new hires on step one of the salary schedule without just cause.

The sections of the collective bargaining agreement violated as follows:

* * *

Public School Code as amended (1949) and any other applicable law and regulations.

A.O. 5. The parties were unsuccessful in resolving this grievance, and the District submitted a demand for arbitration.

A hearing was held before an arbitrator, who sustained the grievance. On February 28, 2001, the arbitrator concluded that the District's refusal to consider a new teacher's prior service in the District when fixing that teacher's salary violated the Public School Code of 1949 Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702 (School Code). The violation of the School Code, in turn, violated the 1999 CBA. The arbitrator wrote as follows:

> In the case within, the Grievants are, therefore, *statutorily* protected against losing credit for prior years of service, a protection that is incorporated by operation of law into the Chambersburg Area School District collective bargaining agreement. However, the "statutory savings" clause that appears in Section 2.2 of the within collective bargaining agreement[2] is also an appropriate vehicle to specifically incorporate various statutory benefits granted under the School Code into the collective bargaining agreement.

A.O.17 (emphasis in original).

The District filed a Petition to Vacate the Arbitration Award, which was granted

---

1. The Memorandum of Understanding stated in relevant part as follows:
 > The Chambersburg Area Education Association and the Chambersburg Area School District agree that the terms and conditions of employment for long-term substitutes would be as provided by policies and practices of the School District that may be amended from time to time by the District for the duration of the collective bargaining agreement between the two parties.

A.O. 5.

2. It states:
 > 2.2 *Legal Rights:* Nothing herein contained shall be deemed to deny, limit, or restrict any professional employee from utilizing any rights which he or she might have under the Constitution or Laws of the Commonwealth or the United States.
 > Section 2.2 of the CBA.

by the trial court. The trial court acknowledged that recent case law had established the principle that the School Code is incorporated by reference into a collective bargaining agreement between a teacher association and a school district. *Mifflinburg Area Education Association v. Mifflinburg Area School District,* 555 Pa. 326, 724 A.2d 339 (1999); *Penns Manor Area School District v. Penns Manor Education Association,* 556 Pa. 438, 729 A.2d 71 (1999). However, the trial court found *Mifflinburg* and *Penns Manor* not to apply, reasoning that they were factually distinguishable. *Mifflinburg* dealt with the rehire of professional employees, not new hires. *Penns. Manor* involved an agreement that was silent on the compensation of new hires with long-term substitute service; by contrast, the parties agreed to exclude long-term substitutes from the scope of the 1999 CBA. Thus, the trial court vacated the arbitrator's award. The Association then appealed to this Court.[3]

■ On appeal, the Association contends that the trial court erred in its narrow application of the holdings in *Mifflinburg* and *Penns Manor.* It argues that these cases stand for the broad proposition that a district may not deny a full time teacher credit for prior service; such action violates the School Code and, thus, a collective bargaining agreement with a teacher association. Further, it contends that the trial court's order is inconsistent with our holding in *Greater Johnstown School District v. Greater Johnstown Education Association,* 804 A.2d 680 (Pa. Cmwlth.2002), which was issued after the January 18, 2002 decision of the trial court in this case. We agree with the Association's analysis.

The interplay of the School Code and collective bargaining agreements between teacher associations and school districts was first addressed by our Supreme Court in *Mifflinburg.* The *Mifflinburg* grievants had previously been employed as regular teachers, resigned and then were rehired. Upon being rehired, they were placed at a point on the salary schedule that did not give them credit for the years employed prior to their break in service. Our Supreme Court held that the provisions of a collective bargaining agreement must conform to the School Code. It stated as follows:

> Section 1121 of the School Code[4] requires that all contracts between school districts and professional employees contain a clause stating that none of the provisions of the School Code may be

---

3. The Association correctly notes that our scope of review is limited when reviewing arbitration awards; it has been summarized by the Pennsylvania Supreme Court as follows:

> The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can ra-

tionally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

> *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA),* 560 Pa. 135, 149–50, 743 A.2d 405, 413 (1999).

4. Section 1121 provides, "AND IT IS FURTHER AGREED by the parties hereto that none of the provisions of this act may be waived either orally or in writing...." 24 P.S. § 11–1121.

waived by school district employees. In addition, Section 703 of the Public Employe Relations Act prohibits the parties from effecting or implementing a provision in a collective bargaining agreement if implementation of that provision would violate or be inconsistent with a statutory enactment. 43 P.S. § 1101.703. *Thus, by statute, actions taken pursuant to a collective bargaining agreement cannot violate the School Code.*

*Mifflinburg,* 555 Pa. at 330–331, 724 A.2d at 342 (emphasis added). Thus, the Supreme Court concluded that,

> The Grievants are statutorily protected against losing credit for previous service under Section 1142 of the School Code,[5] a protection that is incorporated into the collective bargaining agreement. *The arbitrator's award denying credit for past service is violative of the School Code, and thus, violative of the agreement.*

*Mifflinburg,* 555 Pa. at 334, 724 A.2d at 343–344 (emphasis added).

In *Penns Manor,* the Supreme Court reversed this Court's decision to vacate an arbitrator's award. *Penns Manor,* 556 Pa. 438, 729 A.2d 71 (1999). The arbitrator had found that Section 1142(a) of the School Code, 24 P.S. § 11–1142(a), required that long-term substitute experience be recognized in determining a teacher's placement on a salary schedule. *Penns Manor,* 697 A.2d 610 (Pa.Cmwlth. 1997). However, the *Penns Manor* grievants were receiving more than the minimum wages guaranteed by Section 1142 of the School Code; accordingly, this Court vacated the arbitrator's award. *Id.* However, the Supreme Court reversed in a *per curiam* order citing to *Mifflinburg.*

In *Greater Johnstown,* the teacher association filed a grievance on behalf of sixteen individuals that had not been credited for their long-term substitute teaching service when hired by the school district as regular employees. The school district placed the teachers at an entry-level salary because it was expressly authorized by the collective bargaining agreement, which stated that "[s]hould any substitute employee, so described above, be hired as a regular employee of the District, he/she shall have no right or claims as to seniority calculations, salary schedule placement, or accumulation of sick leave for any or all time spent as a substitute employee." *Greater Johnstown,* 804 A.2d at 681. Notwithstanding this provision in the collective bargaining agreement, the arbitrator sustained the grievance, and the trial court denied the district's petition to vacate the arbitrator's award. The district appealed to this Court, and we affirmed the trial court. Even though the terms of the agreement had authorized the district's ac-

5. The statute provides,

a) Except as hereinafter otherwise provided, all school districts and vocational school districts shall pay all regular and temporary teachers, supervisors, directors and coordinators of vocational education, psychologists, teachers of classes for exceptional children, supervising principals, vocational teachers, and principals in the public schools of the district the minimum salaries and increments for the school year 1968–1969 and each school year thereafter, as provided in the following tabulation in accordance with the column in which the professional employe is grouped and the step which the professional employe has attained by years of experience within the school district each step after step 1 constituting one year of service. When a school district, by agreement, places a professional employe on a step in the salary scale, each step thereafter shall constitute one year of service. When a district adopts a salary scale in excess of the mandated scale, it shall not be deemed to have altered or increased the step which the employe has gained through years of service.

24 P.S. § 11–1142(a).

tion, we held those terms unenforceable to the extent they violated the School Code. Accordingly, we held as follows:

> [T]he logical and unavoidable application of *Penns Manor* means that Section 1142 and Section 1149 of the Code require salary credit for long-term substitute service in the same school district where the substitute is hired as a full time professional. The common pleas court properly found that Article IX(E)(4) of the Agreement violated the Code and was invalid.

*Greater Johnstown,* 804 A.2d at 683–684.

In this case, the grievants are permanent teachers who were hired by the District at a salary level that gave no consideration to their prior service for the District as substitute teachers. Under the holdings of *Mifflinburg, Penns Manor* and *Greater Johnstown,* grievants are entitled to the statutory protections of the School Code. First, the "statutory savings" clause [6] of the CBA, expressly incorporates the School Code into the CBA. Second, even if the 1999 CBA were silent on the issue, or directly contrary to the School Code, under *Greater Johnstown* such a contract term is unenforceable. Thus, the trial court erred in vacating the arbitrator's award.

However, the District counters that even if the trial court erred in its reasoning, the holdings in *Mifflinburg, Penns Manor* and

*Greater Johnstown* are inapposite for another reason. The District contends that the Association was aware of the holdings in *Mifflinburg* and *Penns Manor* and deliberately bargained away the issue of credit for previous substitute teaching experience in the 1999 CBA.[7] Accordingly, the Association may not assert rights under the School Code. In support, the District directs the Court to cases holding that an agreed upon term in a collective bargaining agreement cannot be voided under the claim of illegality.[8]

■ In *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978), our Supreme Court disallowed the City's claim that a grievance was not arbitratable, in violation of the Second Class City Civil Service Act [9] and Public Employe Relations Act,[10] because it had expressly agreed to the arbitration procedure in its collective bargaining agreement with the City's public employees. Similarly, in *Grottenthaler v. Pennsylvania State Police,* 488 Pa. 19, 410 A.2d 806, (1980), the Supreme Court upheld the terms of a collective bargaining agreement that conflicted with statute. The Court found that the State Police had bargained away its rights under statute. In short, where a party voluntarily agrees to a contract provision, "it cannot later contend that the act is illegal and refuse to perform it; indeed it

---

6. *See supra* note 2.

7. However, this still leaves *Greater Johnstown* as an impediment to the District's appeal. The parties to the Greater Johnstown collective bargaining agreement could not have been aware of *Mifflinburg* and *Penns Manor* holdings, which were rendered after their Agreement of October 14, 1998 was executed. *Greater Johnstown,* 804 A.2d at 681.

8. In our disposition of this appeal, we assume that the District is correct in its premise that teachers may bargain away rights established

in the School Code. However, in *Mifflinburg,* our Supreme Court stated that "... all contracts between school districts and professional employees contain a clause that none of the provisions of the School Code may be waived by school district employees." *Mifflinburg,* 555 Pa. at 330, 724 A.2d at 342.

9. Act of June 7, 1917, P.L. 609, *as amended,* 53 P.S. §§ 23401–23666.

10. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

will be estopped from doing so." *City of Scranton v. Local Union No. 669*, 122 Pa.Cmwlth. 140, 551 A.2d 643, 646 (1988). *See also Fayette County Board of Commissioners v. American Federation of State, County and Municipal Employees, Council 84*, 692 A.2d 274 (Pa.Cmwlth. 1997).

These cases, however, share a common thread not present in the case *sub judice*. In each case, the parties were aware that the term in the collective bargaining agreement conflicted with statute. Here, the arbitrator made the factual finding that the Association and the District were not aware of *Mifflinburg* and *Penns Manor* at the time the 1999 CBA was negotiated. Thus, the arbitrator concluded that the Association did not knowingly bargain away the right of first time teachers to be paid compensation in accordance with the School Code.

 The arbitrator is to be the judge of disputes arising from a collective bargaining agreement, and our review of arbitration awards is limited.[11] Under the so-called "essence test" adopted by our Supreme Court,[12] the arbitrator has responsibility for construction of a collective bargaining agreement. In this regard, our Supreme Court has directed that

[W]here a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a *question of fact* and is to be respected by the judiciary if "*the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention ....*"

*State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 145, 743 A.2d 405, 411(1999) (quotations omitted) (emphasis added).

In this case, the record shows that the treatment of long-term substitutes was a point of controversy between the District and the Association. In the end, however, the Association agreed that long-term substitutes would not be able to claim rights under the 1999 CBA. Consideration for this agreement can be found in the District's agreement to increase compensation for the 1999–2000 school year above that which had previously been agreed to by the Association. The instant grievance, however, did not concern treatment of long-term substitutes as a class; it concerned newly hired teachers, who were covered by the 1999 CBA.[13]

---

11. *See infra* note 3.

12. Our Supreme Court adopted the essence test in *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). The essence test was enunciated by the United States Supreme Court in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

13. The arbitrator stated:
 I also categorically reject the School District's assertion that the within grievance is a cynical attempt by the Association to

"have it's cake and eat it, too", or some type of unethical or duplicitous reneging on agreements reached at the bargaining table. It is clearly evident that the only goal of the Association during negotiations was to simply enable those individuals who were currently serving as long-term substitutes to enjoy the privileges and benefits set forth in the collective bargaining agreement. The Association eventually agreed to withdraw that issue from the bargaining table. *But, the issue that was withdrawn is quite different from the issue of what rights current permanent employees might have as a result of their prior years of service as long-term*

Further, the arbitrator found that the ability of new teachers to claim the rights established in *Mifflinburg* and *Penns Manor* had not been waived by the Association. Specifically, he wrote:

> [T]he record evidence does not support a finding of any misunderstandings between the parties, nor any inducements causing one party to detrimentally rely upon certain representations. *I firmly believe that neither party ever contemplated the precise issue* that would eventually be generated by the *Mifflinburg* and *Penns Manor* decisions. Therefore, there are no grounds for any defenses based upon waiver, estoppel, reformation, etc., as is argued for by the District.

A.O. 13 (emphasis added). *Mifflinburg* was decided in January of 1999 and *Penns Manor* in May of 1999. On June 9, 1999, the District and the Association executed the 1999 CBA. It is conceivable that the Association was aware of these decisions, but the arbitrator found otherwise. He found that the compensation of full-time teachers with prior substitute teaching service was not a term negotiated or addressed in the 1999 CBA. We are bound by the arbitrator's factual finding.

The arbitrator considered the terms of the 1999 CBA, the history leading up to the agreement as well as the conflicting testimony of the parties, and he found that neither the Association nor the District negotiated in a way that indicated knowledge of *Mifflinburg* and *Penns Manor*. In light of this finding, the District's claim to the contrary does not pertain. In short, the arbitrator's award was rationally derived from the 1999 CBA.

> *substitutes. That was never discussed nor raised in any manner by either party.*

Accordingly, we reverse the trial court decision in order to reinstate the award of the arbitrator.

## ORDER

AND NOW, this 21st day of November, 2002 the order of the Court of Common Pleas of the 39th Judicial District, Franklin County, dated January 18, 2002, in the above-captioned matter is hereby reversed.