PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATION, Petitioner

v.

STATE CIVIL SERVICE COMMISSION (Department of Corrections and Dennis N. Jenkins, Sr.), Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 1, 2006.

Decided June 2, 2006.

Marc L. Gelman, Philadelphia, for petitioner.

Frederick C. Smith, Jr., Chief Counsel, Harrisburg, for respondent, State Civil Service Commission.

M. Abbegael Pacuska, Harrisburg, for respondent, Dennis N. Jenkins, Sr.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Pennsylvania State Corrections Officers Association petitions for review of an adjudication of the State Civil Service Commission directing the Department of Corrections to calculate the seniority rights of Dennis N. Jenkins, Sr. in accordance with the seniority provisions of the State Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1—741.1005 (Civil Service Act). These provisions in the Civil Service Act, however, conflict with the seniority provisions in the collective bargaining agreement (CBA) negotiated on behalf of Jenkins and all other members of his bargaining unit. The question in this appeal is whether Jenkins' seniority rights are governed by the CBA or by the Civil Service Act.

The relevant facts are not in dispute. Jenkins began employment on June 25, 1987, as a Corrections Officer Trainee at SCI–Camp Hill; after successfully completing training, he was made a Corrections Officer 1. On March 1, 1992, he was promoted to Sergeant, a Corrections Officer 2 position. In all three positions, Jenkins was a member of the H–1 Bargaining Unit of the Pennsylvania State Corrections Officers Association (Union), which represents 10,000 members, including all corrections officers employed by the Department.

On March 31, 2002, Jenkins was promoted to Lieutenant, a management level position that took him out of the H–1 Bargaining Unit. Soon after taking the new job, Jenkins requested a return to his former position for reasons "personal and financial [in] nature." Joint Stipulations, Ex. 3; Reproduced Record at 131a (R.R. ____). His request was granted, and on May 26, 2002, Jenkins returned to his position at SCI–Camp Hill as a Sergeant, thereby re-entering the H–1 Bargaining Unit.

When Jenkins returned to his former position, the Department assigned him a seniority date of May 26, 2002, thereby eliminating seniority credit for his employment in the bargaining unit from June 25, 1987, through March 30, 2002. In doing so, the Department followed Article 27, § 2 of the CBA, which provides that an employee who is promoted out of an H–1 bargaining unit and thereafter returns must begin accruing seniority anew.[1]

On May 13, 2002, Jenkins filed an appeal with the Civil Service Commission, challenging his loss of 15 years of seniority. The parties stipulated the facts, and on March 28, 2003, the Commission found in favor of Jenkins. It concluded that Article 27, § 2 of the CBA was invalid and unenforceable because it conflicted with the Civil Service Act, which requires that seniority for persons in the classified service begins with the first day of employment regardless of promotion or transfer. Accordingly, the Commission directed the Department to calculate Jenkins' seniority in accordance with the Civil Service Act.

On April 17, 2003, Union petitioned to intervene and requested the Commission to reconsider its adjudication. After the Commission denied both requests, Union petitioned this Court for review of the Commission's adjudication. This Court vacated the Commission's order and remanded the matter to the Commission to allow Union to participate in the question of how seniority should be calculated for members of the H–1 Bargaining Unit. *Pennsylvania State Corrections Officers Association v. State Civil Service Commis-* *sion (Jenkins and Department of Corrections)* (Nos. 932 and 942 C.D.2003, filed April 28, 2004) (*Jenkins I*).

At the remand hearing, Union supplemented the record from the first hearing with the testimony of Ed McConnell, Executive Vice–President of the Union, who served on the team that negotiated the CBA. McConnell explained that the seniority provisions in the CBA are used to determine overtime, promotion, vacation bidding, job bidding, shift selection, furlough and vacation accrual for members of the H–1 Bargaining Unit. He further explained Union's position that bargaining unit seniority bears no relation to Civil Service seniority. Stated otherwise, McConnell believed that Jenkins' seniority rights under the Civil Service Act were in no way affected by the new starting day for his seniority rights as a member of the H–1 Bargaining Unit. In no case can Jenkins, or any member of Union, be deprived of seniority rights guaranteed by the Civil Service Act.

█ On March 4, 2005, following the hearing and the submission of briefs, the Commission issued the adjudication we consider here.[2] As in *Jenkins I*, the Commission concluded that Article 27, § 2 of the CBA was unenforceable. It rejected Union's argument that there was no conflict between the Civil Service Act and the CBA. Further, it held that the conflict between the Civil Service Act and the CBA had to be resolved in favor of the Civil Service Act, reciting the principle

---

**1.** Article 27, § 2 of the CBA, provides in pertinent part:

> If an employee accepts a transfer out of or is promoted out of this Unit, the employee shall lose whatever Bargaining Unit and Classification seniority the employee has accumulated up to the time of transfer or promotion. If an employee returns to this bargaining unit at any time after such transfer or promotion, the employee's seniority in this bargaining unit shall begin anew.

R.R. 54a.

**2.** The Department did not appeal and did not participate in this matter.

that parties to a collective bargaining agreement may not negotiate a term that conflicts with statutory law. This appeal followed.[3]

On appeal, Union presents two issues for our consideration. First, Union contends the Commission erred in concluding there is a conflict between the CBA and the Civil Service Act, arguing that each operates in a separate universe; as such, each is complementary of the other. Second, Union contends that the Commission's adjudication is inconsistent with the Civil Service Act because that enactment states, more than once, that the selection, appointment, promotion and furlough of civil service employees is governed by the applicable collective bargaining agreement and not by the Civil Service Act.

We begin our analysis of Union's first issue with a review of the CBA and the Civil Service Act, each of which establishes rules for calculating seniority. What is critical to this case is their treatment of a break in service, which can cause an employee to lose accumulated seniority.

Section 807.2(a) of the Civil Service Act, 71 P.S. § 741.809(a),[4] establishes three separate classifications: classified service employment, classification series employment and class employment.[5] Section 807.2(b) explains how seniority is calculated for each classification; it states:

(b) Seniority for the *classified service begins with the date of first civil service employment* in a civil service class and includes periods of subsequent employment in any civil service class providing such employment has been on a *continuous basis.* Seniority for a *classification series* begins with the date of first civil service employment in the class series and includes periods of employment in classes within the series *during any period while employed on a continuous basis* in the classified service. *Seniority in each class* begins with the date of first civil service employment in that class and includes periods of subsequent employment in that class during any period while employed on a *continuous basis* in the classified service.

71 P.S. § 741.809(b) (emphasis added). Section 807.2(b) means that one accrues seniority for continuous employment in the classified service regardless of promotion or transfer out of a classification series.

The Commission's regulation implementing the Civil Service Act also provides that seniority is established on the basis of continuous service. It states:

(a) *Seniority as used in this part shall be continuous service unless broken by one or more of the following: resignation; retirement; failure to report* after notification of appointment through mandatory, preferred

---

3. Appellate review of the Commission's adjudication is limited to a determination of whether constitutional rights have been violated, whether errors of law have been committed or whether the findings of the Commission are supported by substantial evidence. *Pennsylvania Game Commission v. State Civil Service Commission (Toth),* 561 Pa. 19, 26, 747 A.2d 887, 891 (2000).

4. Section 807.2 was added by the Act of June 1, 1945, P.L. 1366, 71 P.S. § 741.809(a).

5. The first, seniority for the classified service, begins with the date of first civil service em-

ployment in a civil service class without regard to how many positions held, providing the employment has been continuous. The second, seniority for a classification series, includes all periods of employment in classes within a series, *e.g.,* Jenkins' accumulated seniority in the progression from Correction Officer Trainee to Corrections Officer 3. The third, class seniority, includes seniority for periods of employment within a particular class, *e.g.,* Jenkins' period of employment as a Corrections Officer 3.

or optional reemployment rights; expiration of mandatory, preferred or optional reemployment rights; or failure to report after leave and acceptance of other permanent employment while on leave of absence without pay. *If service is broken for one of these reasons, the employe shall lose accrued seniority.* If an employe is returned within 1 year after this type of break in service, the employe is entitled to credit for seniority purposes the time accrued up to the time the break in service occurred, but is not entitled to credit for the time represented by the break in service.

4 Pa.Code § 101.71(a) (emphasis added). Thus, under the regulation, seniority is lost where there is a break in service caused by resignation, retirement or "failure to report." However, seniority may be restored if the employee returns within one year of the break in service. The regulation does not identify a transfer or promotion as an event that will cause a break in service, and this is consistent with the Civil Service Act.

The CBA addresses seniority somewhat differently. Article 27, § 1 states that seniority creates a "preferred position" for an employee whose seniority is greater than that of another. R.R. 52a. "Classification seniority standing *for the purpose of promotion* shall be determined by the length of unbroken . . . service with the Employer in the employee's current classification." Article 27, § 1(a) (emphasis added); R.R. 52a. "Bargaining Unit seniority standing *for the purpose of furlough* shall be determined by the length of unbroken . . . service with the Employer in classifications covered by this Agreement." Article 27, § 1(b) (emphasis added); R.R. 53a. The subject of "unbroken service" is addressed in Article 27, § 2, which states as follows:

The following shall constitute a break in service: resignation, separation for just cause, retirement, absence without leave for five consecutive working days, failure to report within 10 consecutive working days of recall, expiration of recall period, failure to report after leave and acceptance of other permanent employment while on leave. This shall not restrict the Employer's right to take whatever personnel action it deems warranted for any of the above. *If service is broken by any of the above, the employee shall lose Bargaining Unit seniority, Classification seniority and longevity credit.* If an employee is returned within one year after such break in service, the employee shall be entitled to credit for longevity purposes and seniority purposes the time accrued up to the time break in service occurred, but shall not be entitled to any credit for the time represented by such break in service.

*If an employee accepts a transfer out of or is promoted out of this Unit, the employee shall lose whatever Bargaining Unit and Classification seniority the employee has accumulated up to the time of transfer or promotion. If an employee returns to this bargaining unit at any time after such transfer or promotion, the employee's seniority in this bargaining unit shall begin anew.*

R.R. 53a–54a (emphasis added).

For the most part, Article 27, § 2 tracks the civil service regulation at 4 Pa.Code § 101.71(a). However, it takes a different course where it mandates that a promotion or transfer out of the H–1 Bargaining Unit causes a break in service and loss of "seniority and longevity credit." Article 27, § 2 of the CBA; R.R. 54a. Further, a return to the bargaining unit within one year of the break in service occasioned by a promotion or transfer does not restore

the lost seniority credit, as it does under the regulation.

■ The CBA's deviation from the Civil Service Act's directive on "break in service" led the Commission to conclude there was a conflict between the two. It held as follows:

> The break-in-service language in the CBA changes the status of appellant's statutory employment entitlement to have his seniority calculated in a particular way. In reviewing this issue, the Commission notes that the CBA requires forfeiture of seniority legally accumulated in a particular civil service class, when forfeiture of the same class seniority would not otherwise be permissible under the [Civil Service Act]; this results in a direct conflict with an Act of the General Assembly, leaving us to determine whether the CBA provision is, therefore, rendered unenforceable by operation of law. 43 P.S. § 1101.703.

Commission Adjudication at 21. We agree with the Commission that the conflict on break in service cannot be denied. Union argues that the CBA and the Civil Service Act operate in different spheres. It may well be that for members of the bargaining unit, seniority has more uses; it determines overtime rights and vacation bidding, for example, which are topics not addressed by the Civil Service Act. However, the conflict with respect to promotion and furlough is unmistakable. Therefore, we cannot find that the Commission erred in concluding that the CBA and the Civil Service Act were in conflict.

We turn, then, to Union's second issue. Union argues that the Commission erred because Sections 601, 602 and 802 of the Civil Service Act specifically state that the terms of a collective bargaining agreement control where inconsistent with those in the Civil Service Act. The Commission found these statutory provisions not dispositive because they speak only to the "procedures" for implementing promotions and furlough; as such, they did not authorize Union to negotiate the "substantive" terms by which to establish seniority. Instead, the Commission found Section 703 of the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.703, to be dispositive. Because Section 703 states that a collective bargaining agreement may not contain a term that conflicts with a statute,[6] the Commission concluded that the CBA was invalid where it conflicted with the Civil Service Act.

■ On this second issue, we begin with a consideration of whether Section 703 of Act 195 barred the parties from negotiating on seniority, a question recently considered by this Court in *Abel v. City of Pittsburgh*, 890 A.2d 1 (Pa.Cmwlth.2005). *Abel* held that Section 703 of Act 195 did not bar public employers and employees from negotiating on core terms of employment, such as seniority and furlough, even where those terms conflicted with another statute. The logic of *Abel* applies with equal force here.

In *Abel*, a collective bargaining agreement required City employees to be laid off by job title and individual department

---

6. In fact, Article 33, § 1 of the CBA reiterates the principle in Section 703; it states:
   In the event that any provisions of this Agreement are found to be inconsistent with existing statutes or ordinances, the provisions of such statutes or ordinances shall prevail, and if any provision herein is found to be invalid and unenforceable by a court or other authority having jurisdiction, then such provision shall be considered void, but all other valid provisions shall remain in full force and effect.
   R.R. 62a.

in reverse order of seniority. By contrast, the Pittsburgh Civil Service Act [7] required that furlough be determined strictly by years of service. After their furlough, several affected City employees appealed to the Pittsburgh Civil Service Commission, which denied their appeal. The trial court reversed, holding that because the operative collective bargaining agreement conflicted with the Pittsburgh Civil Service Act, the CBA was invalid and unenforceable under Section 703 of Act 195.

This Court reversed the trial court, concluding that the trial court misapprehended the meaning of Section 703 of Act 195, which states:

> The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

43 P.S. § 1101.703. At first glance, Section 703 appears to support the broad conclusion that a statute will always trump a collective bargaining agreement. However, our Supreme Court has clarified that Section 703 does not trump collective bargaining on wages, hours and other essential terms of employment. *Pennsylvania Labor Relations Board v. State College*

*Area School District,* 461 Pa. 494, 337 A.2d 262 (1975).

In *State College,* the Supreme Court resolved the conflict between the Public School Code of 1949,[8] which gave school boards the duty to set teacher salaries, and Section 701 of Act 195,[9] which mandates public employers to negotiate "with respect to wages, hours and other terms and conditions of employment." 43 P.S. § 1101.701. The Supreme Court resolved the conflict in favor of Section 701 of Act 195 and held that school boards were *required* to negotiate wages.

In reaching this conclusion, the Supreme Court explained why Section 703 did not compel another result. It reasoned that

> [t]he mere fact that a particular subject matter may be covered by legislation does not remove it from collective bargaining under section 701 if it bears on the question of wages, hours and conditions of employment. We believe that section 703 only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any statutory directive.

*State College,* 461 Pa. at 508, 337 A.2d at 269. It further explained that in determining whether there is a "violation of . . . any statutory directive," courts must examine that "statutory directive" as follows:

> [I]tems bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions *explicitly and definitively prohibit*

7. Act of May 23, 1907, P.L. 206, 53 P.S. § 23454, added by the Act of June 20, 1947, P.L. 663.

8. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

9. Section 701 of Act 195 provides:
   Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and con-

fer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.
43 P.S. 1101.701.

the public employer from making an agreement as to that specific term or condition of employment.

*Id.* at 510, 337 A.2d at 270 (emphasis added). Thus, *State College* teaches that Section 703 prohibits parties from collectively bargaining a term only where the other statute "explicitly and definitively prohibit[s] the public employer from making an agreement as to that specific term." *Id.* In the absence of a direct prohibition, an issue must be negotiated under Section 701 if it impacts wages, hours and other terms or conditions of employment. *Id.* To construe Section 703 otherwise would strip Act 195, which was enacted to authorize collective bargaining for public employees, of any meaning.

In *Abel,* we followed the *State College* directive. We first examined the Pittsburgh Civil Service Act to see if it contained an "explicit" and "definitive prohibition" against negotiation of seniority and furlough. Finding none, we held that the terms of the collective bargaining agreement, not the Pittsburgh Civil Service Act, governed seniority and furloughs. *Abel,* 890 A.2d at 8.[10] The same result is required here. The Civil Service Act does not "explicitly and definitively" prohibit Union and the Department from collectively bargaining the issue of seniority or break-in-service. Therefore, Section 703 of Act 195 did not bar the parties from negotiating a seniority provision in the CBA that differed from the Civil Service Act.

The Commission relied upon Section 703 of Act 195 in holding that the Civil Service Act trumped the CBA. This was error. Section 807.2(b) of the Civil Service Act, 71 P.S., § 741.809(b), sets forth a simple rule for seniority under the act, *i.e.,* it begins with the first day of employment. However, it does not contain an "explicit" and "definitive" prohibition against the negotiation of a different seniority provision in collective bargaining and, thus, under *State College* the parties were free to negotiate on seniority, an essential term of employment.

The Commission's adjudication is also contrary to the Civil Service Act. Seniority only has meaning when applied to employment rights, such as furlough or promotion. Far from prohibiting the parties from negotiating promotion and furlough provisions different from those required by statute, the Civil Service Act expressly authorized such negotiation.[11]

Seniority is central to furlough under the Civil Service Act. It states, in relevant part, that

the employe shall be furloughed *in the order of seniority unless there is in existence a labor agreement covering the employes to be furloughed, in which case the terms of such labor agreement relative to a furlough procedure shall be controlling.*

Section 802 of the Civil Service Act, 71 P.S. 741.802(a) (emphasis added). The Civil Service Act, unlike the CBA, does not make express mention of how seniority affects promotion. However, it does not matter because the legislature has also

---

10. *See also Scuoteguazza v. Department of Transportation,* 41 Pa.Cmwlth. 534, 399 A.2d 1155, 1158 (1979) (furlough provisions of a collective bargaining agreement held not to violate Section 703 of Act 195 because there was "no explicit and definitive proscription of bargaining concerning furlough procedures" in the Civil Service Act).

11. The seniority provision in the CBA limits the ability of a furloughed management employee from returning to his prior position in the H–1 Bargaining Unit, which is his right under Section 802(b) of the Civil Service Act, 71 P.S. § 741.802(b). He can return, but upon doing so he will have the least seniority in the bargaining unit.

given a free hand to the Commonwealth and public employees represented by a union to negotiate on promotion. With regard to promotions, the Act states, in relevant part, that

> *unless there is in existence a labor agreement covering promotions in the classified service, in which case the terms and procedures of such labor agreement relative to the procedures for promotions shall be controlling,* the director shall certify to the appointing authority the names of the three eligibles who are highest on the appropriate promotion list or employment list

Section 601 of the Civil Service Act, 71 P.S. 741.601 (emphasis added). Finally, Section 602 of the Civil Service Act provides:

> If a vacant position is to be filled, an appointing authority may request the director to issue an appropriate certification of eligibles *unless a labor agreement contains promotion procedures which are inconsistent with this act, in which case the terms of such labor agreement shall be controlling.*

71 P.S. 741.602 (emphasis added).[12] Thus, with respect to promotion, furlough and reinstatement, the Civil Service Act expressly authorized the parties to negotiate without regard to any contrary limits in the Civil Service Act. This authority includes the right of the parties to use seniority in ways not contemplated in the Civil Service Act; otherwise, the grant of authority is illusory.

The Commission does not dispute, nor can it, that Sections 601, 602 and 802 of the Civil Service Act expressly authorized the parties to establish the procedures for furlough and promotion in collective bargaining without limitation. The Commission tries to sidestep the plain language of the statute by suggesting that these statutory provisions provide a "narrow" exception, allowing negotiation only on the "procedural mechanisms" for implementing furlough and promotion. Commission Adjudication at 30. It contends that the definition of seniority is a substantive provision on which there can be no negotiation. *Id.* at 32. The Commission fixated on a distinction that has no difference.

First, the parties were not "explicitly and definitively" prohibited from negotiating on the "substance" of seniority. Under *State College,* therefore, they may negotiate on the definition of seniority. Second, seniority is an abstract concept without "substance" until employed in a furlough or promotion. The "procedural mechanism" of furlough is determining the order of seniority; there is nothing more to the process. Promotions are made from the appropriate "promotion" list, unless the collective bargaining agreement provides another "procedure," *i.e.,* employs seniority in ways not contemplated in the Civil Service Act. Section 602 of the Civil Service Act, 71 P.S. § 741.602. In sum, the Civil Service Act regulates promotion and furlough, but those engaged in collective bargaining are

---

**12.** Section 802(c) of the Civil Service Act further provides as follows regarding reinstatement of a furloughed employee:

> Under the rules a regular employe furloughed shall for a period of one year be given preference for reemployment in the same class of position from which furloughed and shall be eligible for appoint-

ment to a position of a similar class in other agencies under this act *unless the terms of an existing labor agreement preclude the employe from receiving the preferential treatment contained in this section in which event the terms of the labor agreement shall be controlling.*

71  P.S. § 741.802(c).

authorized to deviate from those statutory regulations without limit.[13]

Union is correct that Jenkins cannot be generally stripped of his rights as a civil service employee. If he takes another position in state government that does not involve membership in a union, his seniority will be governed, again, by the date he began his employment in the classified service. So long as he is in the H–1 Bargaining Unit, however, his seniority will be governed by the CBA for purposes of promotions and furloughs. Any other result would eviscerate Section 701 of Act 195 as well as Sections 601, 602 and 802 of the Civil Service Act, rendering collective bargaining rights under Act 195 "illusory." *State College*, 461 Pa. at 503, 337 A.2d at 266.[14]

For these reasons, the adjudication of the Commission is reversed.

### ORDER

AND NOW, this 2nd day of June, 2006, the adjudication of the State Civil Service Commission dated March 4, 2005, in the above captioned matter is hereby reversed.

**13.** It is true, as noted by Judge Friedman in her dissent, that Section 807.2(a) of the Civil Service Act, *added by* the Act of June 1, 1945, P.L. 1366, *as amended*, provides that "[s]eniority is established for the classified service, classification series and for each class." 71 P.S. § 741.809(a). We disagree that this language amounts to a statutory directive for purposes of the rule in Section 703 of Act 195 that a collective bargaining term may not violate a statutory directive. As our Supreme Court explained in *State College*, Section 703 has no application unless there is an explicit prohibition against negotiating on promotions, furloughs and seniority in the "existing statutes or ordinances" that conflict with the CBA. R.R. 62a. There is no such explicit prohibition in Section 807.2(a) of the Civil Service Act.

## DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from reversal of the decision of the State Civil Service Commission (Commission) holding that Article 27, § 2 of the Collective Bargaining Agreement (CBA) between the Pennsylvania State Corrections Officers Association (PSCOA) and the Department of Corrections (Department) is plainly in conflict with seniority provisions of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1–741.1005, and therefore is invalid and unenforceable. The majority has provided a description of the facts and the procedures involved in this matter, including the request filed by Dennis N. Jenkins, Sr. a few days after his starting a new position as a Lieutenant, Corrections Officer 3, at a different facility, to be returned to his former position as a Sergeant, Corrections Officer 2, at SCI–Camp Hill.

When Jenkins left his Corrections Officer 2 position he left the H–1 bargaining unit, which represents 10,000 corrections officers and certain other employees. Jenkins did not leave the classified service, and his service was not broken under Sec-

**14.** The dissent of Judge Smith–Ribner agrees with the Commission that the Civil Service Act protected Jenkins' seniority, citing several cases in support thereof. First, none of the cases cited by the dissent addressed the question of whether the contract term at issue was a core term of employment such as wages, hours and other like terms. *State College*, 461 Pa. at 508, 337 A.2d at 269. *State College* teaches that unless the public employer is explicitly prevented from negotiating such a term, it may negotiate a term that conflicts with a statutory directive. Second, the dissent fails to account for the fact that Sections 601, 602 and 802 of the Civil Service Act expressly authorize the Commonwealth and Union to negotiate on furlough and promotions, even if those terms conflict with what is stated in the Civil Service Act on furlough and promotion.

tion 807.2(b) of the Civil Service Act, added by Section 1 of the Act of June 1, 1945, P.L. 1366, 71 P.S. § 741.809(b), which provides: "Seniority for the classified service begins with the date of first civil service employment in a civil service class and includes periods of subsequent employment in any civil service class providing such employment has been on a continuous basis." Subsection (b) has similar provisions for seniority in a "classification series" and in "each class," which are the other forms established in subsection (a).[1]

PSCOA's assertion that Civil Service Act seniority and CBA seniority do not interact is not tenable and represents the crux of the conflict in this case. CBA seniority is employed for calculations under various procedures, including the selection of overtime and vacation time as well as decisions on furlough and promotion. As the Commission posited, if a furlough were necessary shortly after Jenkins' return to his position as Corrections Officer 2 at SCI–Camp Hill, and Article 27, § 2 applied, he would be the first to go, and it would be of no comfort to him to be told that his years of Civil Service Act seniority remained intact.

Article 27, § 1 of the CBA recognizes "Bargaining Unit" seniority, which is the time that an employee is continuously employed in one of the sixty-four classifications that make up the H–1 bargaining unit, and "classification" seniority, which is

continuous employment in a classification. Breaks in service are governed by Article 27, § 2, which provides in pertinent part:

If an employee accepts a transfer out of or is promoted out of this Unit, the employee shall lose whatever Bargaining Unit and Classification seniority the employee has accumulated up to the time of transfer or promotion. If an employee returns to this bargaining unit at any time after such transfer or promotion, the employee's seniority in this bargaining unit shall begin anew.[2]

To reassure applicants for promotion, Section 804.1(b) of the Civil Service Act, added by Section 3 of the Act of September 29, 1951, P.L. 1636, 71 P.S. § 741.804a(b), provides a guaranteed right to return "to the position previously held" in the first three months of the probationary period.

When Jenkins submitted a request to return to his former position he was in fact exercising a statutory right to return. The implementing regulation, 4 Pa.Code § 97.38, provides in subsection (1) that during the probationary period the position vacated by the promoted employee will not be filled except on a substitute basis. The Commission concluded that these provisions plus the provision of Section 807.2, that seniority in the classified service continues so long as there is continuous employment in any civil service class, encourage persons in the classified service to seek and accept promotions

1. The implementing regulation relating to break in service, 4 Pa.Code § 101.71, provides in subsection (a) that seniority shall be continuous unless broken by enumerated events including resignation and retirement but not including transfer or promotion to another position in the classified service. Further, if service is broken for a specified reason and an employee returns within one year, the employee is entitled to credit for the time accrued until the break.

2. Article 27, § 2 also defines "break in service" to include resignation, separation for cause and certain other specified reasons and provides, parallel to 4 Pa.Code § 101.71, that if service is broken for a specified reason and the employee returns within one year, the employee shall be entitled to credit for the time before the break. Thus loss of seniority based on break in service followed by a return applies only where an employee accepts a transfer or a promotion out of the H–1 bargaining unit.

without fear, knowing that if the promotions do not work out, at least in a relatively brief initial period, they can return to their previous positions.

There is evidence in this record that the provision of Article 27, § 2 was intended to conflict with the Civil Service Act. Edward McConnell, Executive Vice–President of PSCOA, acknowledged in his testimony that in the first 90 days, under the civil service rules, an employee has the right to come back on his or her own, stating: "We don't affect that right because that is the law." N.T., p. 36. However, he explained PSCOA's position that if a person were promoted out of the H–1 bargaining unit and exercised his right to return, the effect would be to bump the person who was promoted into the position that the first person vacated. The CBA provision is intended to create a deterrent. McConnell stated: "People who take the promotion or transfer out are aware that the language is in here. They know that if they come back, that there is a down side and the down side is that their Bargaining Unit seniority begins anew." *Id.*, p. 35.

Section 703 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.703, provides:

> The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

Echoing this general requirement for all public employment contracts, Article 33, § 1 of the CBA provides:

> In the event that any provisions of this Agreement are found to be inconsis-

tent with existing statutes or ordinances, the provisions of such statutes or ordinances shall prevail, and if any provision herein is found to be invalid and unenforceable by a court or other authority having jurisdiction, then such provision shall be considered void, but all other valid provisions shall remain in full force and effect.

As the Commission acknowledged, Section 601 of the Civil Service Act, 71 P.S. § 741.601, specifies a procedure for certifying eligibles for promotion "unless there is in existence a labor agreement covering promotions in the classified service, in which case the terms and procedures of such labor agreement *relative to the procedures for promotions* shall be controlling. . . ." (Emphasis added.) Similar language appears in Section 602, 71 P.S. § 741.602, regarding selection and appointment of eligibles and Section 802(a), 71 P.S. § 741.802(a), regarding procedures for determining furloughs.

The majority relies primarily upon the recent decision in *Abel v. City of Pittsburgh,* 890 A.2d 1 (Pa.Cmwlth.2005), to conclude that the language in Sections 601, 602 and 802(a) of the Civil Service Act controls and authorizes a CBA provision in plain conflict with the Civil Service Act. In *Abel* the Court addressed the legality of seniority and furlough provisions of a CBA that were different from furlough provisions in the general civil service chapter of the Second Class City Code, Act of May 23, 1907, P.L. 206, *as amended,* 53 P.S. §§ 23431—23462. The CBA required the City of Pittsburgh to lay off employees by job title and individual department, in reverse order of seniority, within three seniority units consisting of laborers, drivers and crafts, whereas Section 20.1 of the civil service chapter, added by Section 1 of the Act of June 20, 1947, P.L. 663, 53 P.S. § 23454, provided that the last employee

hired should be the first to be laid off, without regard to job title or classification. The Court determined that Section 703 of the PERA did not operate as a bar to enforcement of the CBA provisions over the contrary statutory provision.

The Court in *Abel* relied upon *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), where the meaning of Section 703 of the PERA was raised in the context of a teachers' collective bargaining agreement. The Supreme Court concluded that provisions of Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702, requiring school boards to set teacher salaries did not prevent collective bargaining pursuant to Section 701 of the PERA, 43 P.S. § 1101.701, which requires public employers to bargain in good faith with respect to wages, hours and other terms and conditions of employment. The Supreme Court stated that items bargainable under Section 701 are excluded from bargaining under Section 703 only where other applicable statutory provisions explicitly and definitively prohibit the public employer from making an agreement as to a specific term or condition of employment. In *Abel* the Court did not find any explicit and definitive prohibition against bargaining over seniority and furlough, and it concluded that the CBA provisions prevailed.

The majority overstates the application of *State College Area School District* to the present case. The Supreme Court and this Court have not hesitated to hold that negotiated contractual provisions were unenforceable under Section 703 of the PERA. In *Allegheny Valley School District v. Allegheny Valley Educ. Ass'n*, 25 Pa.Cmwlth. 559, 360 A.2d 762 (1976), this Court vacated an arbitrator's award that required a school district to pay full regular salary to teachers while on sabbatical leave pursuant to a negotiated CBA provision. The Court held that the negotiated term was inconsistent with Section 1169 of the School Code, 24 P.S. § 11–1169, which at that time provided: "The person on leave of absence shall receive one-half of his or her regular salary during the period that he or she is on sabbatical leave." Therefore, the CBA provision was unenforceable under Section 703 of the PERA. Similarly, in *Greater Johnstown School District v. Greater Johnstown Educ. Ass'n*, 167 Pa.Cmwlth. 50, 647 A.2d 611 (1994), this Court vacated an arbitrator's award that required a school district to recall a tenured furloughed teacher to fill temporary vacancies in areas in which he was not certified, pursuant to a CBA term. The Court held that such a requirement violated Section 1202 of the School Code, 24 P.S. § 12–1202, which provides: "No teacher shall teach, in any public school, any branch which he has not been properly certificated to teach."

In *Mifflinburg Area Educ. Ass'n ex rel. Ulrich v. Mifflinburg Area School District*, 555 Pa. 326, 724 A.2d 339 (1999), a new CBA provided for a fifteen-step pay scale based upon years of service, but the school district credited service only after a break in service. An arbitrator decided a grievance in favor of the school district. The Supreme Court interpreted language in Section 1142 of the School Code, 24 P.S. § 11–1142, that "[w]hen a district adopts a salary scale in excess of the mandated scale, it shall not be deemed to have altered or increased the step which the employe has gained through years of service," plus a provision in Section 1149, 24 P.S. § 11–1149, that where teachers enter a new school district they shall enter at a point agreed upon, as requiring that a teacher's past years of service be credited upon rehire into the same school district. Relying upon Section 1121 of the School

Code, 24 P.S. § 11–1121, which provides that all contracts contain a clause stating that none of the provisions of the School Code may be waived by district employees, and Section 703 of the PERA the Supreme Court reinstated the trial court's order vacating the award.

In *Greater Johnstown School District v. Greater Johnstown Educ. Ass'n*, 804 A.2d 680 (Pa.Cmwlth.2002), a CBA explicitly provided that substitutes hired as regular teachers would have no claims for seniority, salary or accumulated sick leave based upon the time served as a substitute. This Court affirmed the decision of a trial court confirming the decision of an arbitrator who held that credit for such time served was required under *Mifflinburg* and the Supreme Court's per curiam reversal, citing *Mifflinburg*, in *Penns Manor Area School District v. Penns Manor Educ. Ass'n*, 556 Pa. 438, 729 A.2d 71 (1999). Similarly, in *Chambersburg Area School District v. Chambersburg Area Educ. Ass'n*, 811 A.2d 78 (Pa.Cmwlth.2002), *aff'd*, 578 Pa. 638, 854 A.2d 1277 (2004), despite a memorandum of understanding that the terms and conditions of employment for long-term substitutes would remain the prerogative of the school district, this Court reversed a trial court order that vacated an arbitrator's award requiring the school district to credit time spent as a substitute when hiring. The Court concluded that under *Mifflinburg*, *Penns Manor* and the 2002 *Greater Johnstown School District* decisions, the grievants had statutory protection.

The above cases clearly demonstrate that the prohibition in Section 703 of the PERA against a contract provision that violates or is inconsistent with a statutory enactment has not been rendered a dead letter by *State College Area School District*. As illustrated above, the loss of seniority provision in Article 27, § 2 was designed to act as a threat to discourage former bargaining unit members from returning to the H–1 bargaining unit in precisely the situation that Section 804.1(b) of the Civil Service Act and 4 Pa.Code § 97.38(1) provide protection for such a return. Under the cases noted above, I find this violation and inconsistency with statute to render the disputed provision of Article 27, § 2 unenforceable.

Nor do I agree that Sections 601, 602 and 802(a) of the Civil Service Act specifically authorize Article 27, § 2. Those provisions state that CBA provisions relating to "procedures" for certifying, appointment and furlough may be different from the statute. As the Commission properly concluded, they do not specifically authorize adoption of a CBA provision relating only to seniority and to return following a promotion or a transfer that is undeniably in conflict with the Civil Service Act. Indeed, the "procedures" for certifying, appointment and furlough are not involved here, as is shown by the fact that if a person had a break for another reason specified in Article 27, § 2, such as resignation, *see* n. 2 above, and returned with credit, the same furlough procedures, for example, would apply but the result would be different only because the seniority stripping provision would not apply.[3]

---

**3.** As the preceding discussion indicates, contrary to the statement of the majority in n. 13, the dissent has not failed to account for the operation of Sections 601, 602 and 802 of the Civil Service Act; rather, it is the majority that fails to properly interpret those Sections. I disagree with the Commission's characterization of rules governing procedures for promotion and furlough as "procedural"—the basic rules governing promotion and furlough are substantive rules and those rules relating to enforcement of these rights in legal proceedings are procedural. The three Sections authorize negotiation of different "procedures" for certification, appointment and furlough, but the Article 27, § 2 provision at

Therefore, I dissent from the decision reached by the majority because it is inconsistent with and contrary to established precedent.

Judge FRIEDMAN joins in this dissent.

## CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

Like the majority, I agree with the State Civil Service Commission (Commission) that the seniority provisions of the State Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1–741.1005 (Civil Service Act) conflict with Article 27, Section 2 of the collective bargaining agreement (CBA) negotiated between the Corrections Officers union and the Department of Corrections (Department) on behalf of the H–1 Bargaining Unit. (Majority op. at 1002.) However, unlike the majority, I also agree with the Commission that, due to the conflict, the Civil Service Act, not the CBA, controls whether Dennis N. Jenkins, Sr., retains or loses his fifteen years of seniority in this case.[1]

### I. Section 703

Section 703 of the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.703, provides:

The parties to the collective bargaining process shall not effect or implement a provision of a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

Our supreme court set forth the meaning of section 703 of Act 195 in *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 510, 337 A.2d 262, 270 (1975), stating that section 703 only excludes items from bargaining "where other applicable statutory provisions explicitly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment." The court explained, even providing an example.

We believe that section 703 only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any *statutory directive.* [This] . . . is best illustrated by an example. Under section 1142 of the Public School Code, *a minimum salary scale* is set forth. Section 1151 provides that school boards may pay salaries in excess of the minimum salary. [Thus,] *section 1142 created a duty not to pay below the minimum scale* and section 1151 granted the employer the prerogative to pay more than the minimum rate. *Clearly, the parties are precluded from agreeing to a rate lower than the minimum scale* but even though the statute vested in the public employer the prerogative to pay a higher rate, to do so as a result of collective bargaining is not "in violation of, or inconsistent with, or in conflict with" the statute in question.

*Id.* at 508–09, 337 A.2d at 269 (emphasis added). The majority does not discuss this example of a statutory directive, but, obviously, this means that, although public employees may bargain over salaries, the result cannot conflict with the statutory

issue here is solely a narrow, seniority stripping measure that takes effect long before such procedures are invoked.

1. Under the CBA, Jenkins loses his fifteen years of seniority; under the Civil Service Act, Jenkins retains his seniority.

minimum salary scale directed by the legislature.

Here, like the minimum salary scale, the legislature established seniority rules for public employees, stating that "Seniority *is established* for the classified service, classification series and for each class." Section 807.2(a) of the Civil Service Act, *added by* the Act of June 1, 1945, P.L. 1366, *as amended,* 71 P.S. § 741.809(a) (emphasis added). If there is any doubt that section 807.2 is a statutory directive, that doubt is dispelled by section 903 of the Civil Service Act, which provides, in pertinent part, as follows:

> [A person] who wilfully or through culpable negligence violates any of the provisions of this act [the Civil Service Act] or of any rules made thereunder, shall for each offense be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine ... or to serve imprisonment ... or both, in the discretion of the court.

71 P.S. § 741.903. I cannot imagine a more forceful statutory directive than to criminalize a violation of the seniority rules. In my view, section 903 constitutes an explicit and definitive prohibition against negotiating a CBA that, in any part, conflicts with the seniority rules in section 807.2 of the Civil Service Act. Thus, to the extent that the seniority provisions of the CBA conflict with the Civil Service Act, the CBA cannot control in this case.

## II. Article 33, Section 1

The majority notes, without discussion, that Article 33, Section 1 of the CBA contains language that is similar to section 703 of Act 195.

> In the event that any provisions of this Agreement are found to be *inconsistent with existing statutes* or ordinances, the provisions of such statutes or ordinances shall prevail, and if any provision

herein is found to be invalid and unenforceable by a court or other authority having jurisdiction, then such provision shall be considered void, but all other valid provisions shall remain in full force and effect.

(Majority op. at 1002 n. 6) (emphasis added). Here, the seniority provisions in Article 27, section 2 of the CBA are "inconsistent with" the statutory directive contained in section 807.2 of the Civil Service Act. Therefore, section 807.2 of the Civil Service Act prevails.

Accordingly, for this reason, I would affirm the Commission.

Judge SMITH–RIBNER joins in this dissent.